MARY DEVLIN, as Administratrix, etc., Appellant, *v.* JOSIAH T. SMITH et al., Respondents.

An employer does not undertake, absolutely, with his employes for the sufficiency or safety of the implements and facilities furnished for their work, but only for the exercise of reasonable care ; and when injury to an employe results from a defect in the implements, knowledge of the defect must be brought home to the employer, or proof given that he omitted the exercise of proper care to discover it.

Defendant, J. T. S., a painter, contracted to paint the inside of the dome of a court-house. Having no experience in building scaffolds, or knowledge of that business he made a contract with defendant J.S., an experienced scaffold-builder, to erect the necessary scaffolding, which was to be first-class. Through the negligence of J. S., the scaffold was defectively constructed, and, in consequence, while D., plaintiff's intestate, who was in the employ of J. T. S., was at work upon the scaffold, it gave way, and D. received injuries causing his death  In an action to recover damages, it did not appear that J. T  S. knew, or had reason to know, of any defect in the scaffold. *Held,* that J. S. was not the agent, or servant, of J. T. S., but an independent contractor, for whose acts, or omissions, the latter was not liable ; that it was not negligence for him to rely upon the judgment of J. S. as to the sufficiency of the scaffold, and the propriety of the mode of construction; and that, therefore, J. T. S. was not liable. But *held* (EARL, J., dissenting) that J. S. was liable, as, although there was no privity of contract between him and D., he had contracted to build a structure for the workmen of J. T. S., any defect wherein, which would cause it to give way, would naturally result in injury to said workmen, and he owed them a duty to use proper diligence, independent of his contract.

*Mayor* v. *Cunliff* (2 N Y 165), *Loop* v. *Litchfield* (42 id. 351), *Losee* v. *Clute,* (51 id. 494), distinguished

*Devlin* v. *Smith* (25 Hun, 206), reversed in part.

(Argued February 10, 1882 ; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 12, 1881, which affirmed a judgment entered upon an order dismissing plaintiff's complaint on trial. (Reported below, 25 Hun, 206.)

This action was brought to recover damages for alleged negligence, causing the death of Hugh Devlin, plaintiff's intestate.

Defendant Smith entered into a contract with the supervisors of the county of Kings, by which he agreed to paint the inside of the dome of the court-house in that county.

Smith was not a scaffold-builder, and knew nothing of that business. He entered into a contract with defendant Stephenson, who was an experienced scaffold-builder, and had been previously employed by Smith, to build the necessary scaffold. This was to be of the best materials, and first-class in every way. Stevenson built the scaffold of poles, in sections. To the poles used for uprights, horizontal poles were lashed with ropes ; these were called ledgers. Upon these ledgers, plank were placed, and upon the top of each section so constructed, was placed another similarly constructed. When the scaffolding reached the curve of the dome, it was necessary to lessen the width of the upper section. For this purpose a strip of plank was used as an upright to support the end of the shorter ledger. This upright was called a cripple ; but instead of fastening the ledger to it by lashing it was fastened by nailing. The scaffold was ninety feet in height.

Devlin was a workman in Smith's employ. He was working on the curve of the dome, and sitting on a plank laid upon a ledger which was nailed to an upright or cripple, as above described, when the ledger gave way and broke. He was precipitated to the floor below, and so injured that he died soon after.

*Thomas E. Pearsall* for appellant. It was the duty of the defendant Smith to furnish for the use of his servants proper, suitable, safe and sufficient machinery, means and appliances, and keep them in safe and suitable condition. (*Corcoran* v. *Holbrook*, 59 N. Y. 517 ; *Laning* v. *New York Cent. R. R.*, 49 id. 532 ; *Booth* v. *B. & A. R. R.*, 73 id. 38 ; *Wright* v. *New York Cent. R. R.*, 25 id. 562 ; *Flike* v. *B. & A. R. R.*, 53 id. 549, 553 ; *Cone* v. *D. & L. W. R. R.*, 81 id. 206, 208 ; *Brickner* v. *New York Cent. R. R.*, 2 Lans. 506 ; affirmed, 49 N. Y. 672 ; *Kain* v. *Smith*, 80 id. 468 ; *Crispin* v. *Babbitt*, 81 id. 521 ; *Fuller* v. *Jewett*, 80 id. 46, 51.) It is not necessary to show that the defendant Smith had actual knowledge or notice of the defect in the scaffold. It is sufficient that he ought to have known, or could, by the exercise of reasonable care, have ascertained, its defective condition. ( *Wright* v.

*N. Y. C. R. R.*, 25 N. Y. 562–566 ; *Brickner* v. *N. Y. C. R. R.*, 2 Lans. 506–513 ; affirmed, 49 N. Y. 672 ; *Fuller* v. *Jewett*, 80 id. 46 ; *Booth* v. *B. & A. R. R.*, 73 id. 38 ; *Flike* v. *N. Y. C. R. R.*, 53 id. 549 ; *Spelman* v. *Fisher Iron Co.*, 56 Barb. 151, 165 ; *Connolly* v. *Poillon*, 41 id. 366 ; affirmed, 41 N. Y. 619 ; *Ryan* v. *Fowler*, 24 id. 410, 414 ; *Gibson* v. *Pacific R. R.*, 2 Am. Rep. 497, 503 ; *Noyes* v. *Smith*, 28 Vt. 59 ; *Chicago, etc., R. R.* v. *Platt*, 89 Ill. 141 ; *Wedgewood* v. *C. & N. W. R. R.*, 44 Wis. 2 ; *Holmes* v. *Clark*, 10 W. R. 405.) The defendant Stevenson was liable on the ground of a neglect or disregard of a public duty or obligation. (*Thomas* v. *Winchester*, 6 N. Y. 396 ; *Cook* v. *N. Y. Floating Dock Co.*, 1 Hilt. 436 ; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124 ; *Godley* v. *Haggerty*, 20 Penn. St. 387 ; *Fort* v. *Whipple*, 11 Hun, 586.) It is a matter of right in the plaintiff to have the issue of negligence submitted to the jury when it depends on conflicting evidence, or on inferences to be drawn from circumstances in regard to which there is room for a difference of opinion among intelligent men. (*Payne* v. *T. & B. R. R.*, 83 N. Y. 574 ; *Wolfkiel* v. *Sixth Ave. R. R.*, 38 id. 49 ; *Weber* v. *N. Y. C. R. R.*, 58 id. 451 ; *Hart* v. *H. R. Bridge Co.*, 80 id. 622 ; *Colt* v. *Sixth Ave. R. R.*, 49 id. 671 ; *Painton* v. *N. C. R. R.*, 83 id. 7–14 ; *Fort* v. *Whipple*, 11 Hun, 586–590, 591–593.) The question of contributory negligence on the part of the deceased was a question of fact for the jury. ( *Weber* v. *N. Y. C. R. R.*, 58 N. Y. 451 ; *Thurber* v. *Harlem R. R.*, 60 id. 330, 331 ; *Hawley* v. *N. C. R. R.*, 82 id. 370 ; *Belton* v. *Baxter*, 58 id. 411.) The deceased had the right to assume that the defendant Smith exercised due care and diligence in providing the scaffold, and that it was a safe and suitable structure to work upon (*Connolly* v. *Poillon*, 41 Barb. 366–369 ; affirmed, 41 N. Y. 619 ; *Noyes* v. *Smith*, 28 Vt. 59 ; 24 N. Y. 414 ; *Jetter* v. *N. Y. & H. R. R.*, 2 Abb. Ct. App. Dec. 458, 461 ; *Ford* v. *Fitchburg R. R.*, 14 Am. Rep. 606 ; *Gibson* v. *Pacific R. R.*, 2 id. 500 ; *Fort Wayne R. R.* v. *Gildersleeve*, 33 Mich. 133 ; *Toledo R. R.*

*Co.* v. *Ingraham*, 77 Ill. 309 ; *Laning* v. *N. Y. C. R. R.*, 49 N. Y. 521, 531.)

*Winchester Britton* for respondents. It is the duty of the plaintiff to prove, and the right of the defendant, who is charged with negligence causing an injury, that he should prove by satisfactory evidence, that he did not contribute to the injury by any negligence on his own part. (*Warner* v. *N. Y. C.*, 44 N. Y. 465 ; *Cordell* v. *Central Road*, 75 id. 332.) As plaintiff knew the perils of the service and consented to continue in it, he has no claim upon his employer in respect to injuries resulting from these perils. (*Wright* v. *Central Road*, 25 N. Y. 652–70 ; *Owen* v. *Central Road*, 1 Lans. 108 ; *Haskins* v. *N. Y. C. & H. R. R. Co.*, 65 Barb. 129.) If the risks were open and visible, he was bound to take notice of them. (Wood's Master and Servant, § 326 ; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282 ; *Priestly* v. *Fowler*, 3 M. & W. 1 ; *Potts* v. *Plunkett*, 9 Jur. C. L. 290 ; *Ogden* v. *Summers*, 3 Cl. & F. 751 ; *Riceman* v. *Havemeyer*, 84 N. Y. 647 ; *Buzzell* v. *Laconia Mfg. Co.*, 48 Me. 113 ; *Loonon* v. *Brockway*, 3 Robt. 74.) So far as the defendant Smith is concerned, assuming the accident to have been due to the fact that the upright was nailed instead of being lashed, the case fails to show that he "omitted any duty which makes him responsible to the plaintiff." (*Henry* v. *S. I. R. R. Co.*, 81 N. Y. 373 ; *De Graff* v. *N. Y. C. R. R.*, 76 id. 125 ; *Fuller* v. *Jewett*, 80 id. 46 ; *Coughtry* v. *Woolen Co.*, 56 id. 124.) He was bound to exercise an ordinary and reasonable degree of care and diligence in furnishing a scaffold for his men to work on. (*Bissell* v. *N. Y. & H. R. R. Co.*, 70 N. Y. 171 ; *Md. R. R. Co.* v. *Barber*, 5 Ohio St. 541 ; *Gibson* v. *R. R. Co.*, 2 Am. Rep. 497 ; *Hard* v. *R. R. Co.*, 32 Vt. 473.) There was no privity between Stephenson and Smith's employes ; he owed them no duty, and he cannot be held liable for any accident happening after he had finished the scaffold and Smith had assumed control of it. (*Losee* v. *Clute*, 51 N. Y. 494 ; *Loop* v. *Litchfield*, 42 id. 351 ; *Coughtry* v. *Globe Woolen Co.*,

56 id. 124; *Longmeid* v. *Holliday*, 6 Eng. Law & Eq. 362; *Mayor* v. *Cunliff*, 2 N. Y. 165; *Burke* v. *De Castro*, 11 Hun, 355; *Thomas* v. *Winchester*, 6 N. Y. 397.)

Rapallo, J.　Upon a careful review of all the testimony in this case, we are of opinion that there was sufficient evidence to require the submission to the jury of the question, whether the breaking down of the scaffold was attributable to negligence in its construction. It appears that the ledger which supported the plank upon which the deceased was sitting broke down without any excessive weight being put upon it, and without any apparent cause sufficient to break a well-constructed scaffold. One witness on the part of the plaintiff, accustomed to work on scaffolds and to see them built, testified that the upright which supported the end of the ledger should have been fastened to it by lashing with ropes, instead of by nailing, and that lashing would have made it stronger, giving as reasons for this opinion, that the springing of the planks when walked upon was liable to break nails or push them out, whereas lashings would only become tighter, and the witness testified that the kind of scaffold in question was generally fastened by lashing, and that it was not the proper way to support the end of the ledger which broke, with an upright nailed to the ledger, and that the ledger in question was fastened by nailing.

Another, a carpenter and builder, testified, that when, on account of the curving of a dome, it became necessary to put in a cripple, the cripple as well as the main uprights should be tied to the ledgers with rope; that the springing of the scaffold will break nails.

The appearances after the breakage were described to the jury, and a model of the scaffold was exhibited to them. Testimony touching the same points was submitted on the part of the defendants, and we think that on the whole evidence it was a question of fact for the jury, and not of law for the court, whether or not the injury was the result of the negligent construction of the scaffold.

The question of contributory negligence on the part of the deceased was also one for the jury. They had before them the

circumstances of the accident. It appeared that the deceased was sitting on a plank, performing the work for which the scaffold had been erected. He was washing the interior wall of the dome, preparatory to its being painted. There was nothing to indicate that he was in an improper place, or that he unnecessarily exposed himself to danger, or did any act to contribute to the accident. It is suggested that he, or some of his fellow-servants, may have kicked against the upright or brace which supported the end of the ledger, and thus thrown it out of place, but there was no evidence which would entitle the court to assume that the accident occurred from any such cause. The case was, therefore, one in which the jury might have found from the evidence that the death was caused by the improper or negligent construction of the scaffold, and without any fault on the part of the deceased, and the remaining question is, whether, if those facts should be found, the defendants, or either of them, should be held liable in this action.

The defendant Smith claims that no negligence on his part was shown. He was a painter who had made a contract with the supervisors of Kings county to paint the interior of the dome of the county court-house, and the deceased was a workman employed by him upon that work. As between Smith and the county, he was bound to furnish the necessary scaffolding; but he was not a scaffold-builder, nor had he any knowledge of the business of building scaffolds, or any experience therein. He did not undertake to build the scaffold in question himself, or by means of servants or workmen under his direction, but made a contract with the defendant Stevenson to erect the structure for a gross sum, and the work was done under that contract, by Stevenson, who employed his own workmen and superintended the job himself. Mr. Stevenson had been known to Smith as a scaffold-builder since 1844. His experience had been very large, and Smith had employed him before, and on this occasion the contract with him was for a first-class scaffold. There is no evidence upon which to base any allegation of incompetency on the part of Stevenson, nor any charge of negligence on the part of Smith in selecting him as contractor, nor

is there any evidence that Smith knew, or had reason to know, of any defect in the scaffold.

An employer does not undertake absolutely with his employes for the sufficiency or safety of the implements and facilities furnished for their work, but only for the exercise of reasonable care in that respect, and where injury to an employe results from a defect in the implements furnished, knowledge of the defect must be brought home to the employer, or proof given that he omitted the exercise of proper care to discover it. Personal negligence is the gist of the action. (*Wright* v. *New York Central R. R. Co.*, 25 N.Y. 566; *Warner* v. *Erie Railway Co.*, 39 id. 468, 475; *Wilson* v. *Merry*, L. R., 1 Scotch & Div. App. 326; *Fuller* v. *Jewett*, 80 N. Y. 46; 36 Am. Rep. 575.)

Under the recent decisions in this State, it may be that if Smith had undertaken to erect the scaffold through agents, or workmen acting under his direction, he would have been liable for negligence on their part in doing the work, provided that in doing it they were not fellow-servants of the party injured. But in this case he did not so undertake. Stevenson was not the agent or servant of Smith, but an independent contractor for whose acts or omissions Smith was not liable. (*Blake* v. *Ferris*, 5 N. Y. 48.) Smith received the scaffold from him as a completed work, and we do not think that it was negligence to rely upon its sufficiency and permit his employes to go upon it for the purpose of performing their work. Stevenson was, as appears from the evidence, much more competent than Smith to judge of its sufficiency. He had undertaken to construct a first-class scaffold, and had delivered it to Smith in performance of this contract, and we do not think that Smith is chargeable with negligence for accepting it without further examination. All that such an examination would have disclosed would have been that the upright was nailed to the ledger, and Smith, not being an expert, would have been justified in relying upon the judgment of Stevenson as to the propriety of that mode of fastening. The defect was not such as to admonish Smith of danger.

If any person was at fault in the matter it was the defendant Stevenson. It is contended, however, that even if through his negligence the scaffold was defective, he is not liable in this action because there was no privity between him and the deceased, and he owed no duty to the deceased, his obligation and duty being only to Smith, with whom he contracted.

As a general rule the builder of a structure for another party, under a contract with him, or one who sells an article of his own manufacture, is not liable to an action by a third party who uses the same with the consent of the owner or purchaser, for injuries resulting from a defect therein, caused by negligence. The liability of the builder or manufacturer for such defects is, in general, only to the person with whom he contracted. But, notwithstanding this rule, liability to third parties has been held to exist when the defect is such as to render the article in itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use. As where a dealer in drugs carelessly labeled a deadly poison as a harmless medicine, it was held that he was liable not merely to the person to whom he sold it, but to the person who ultimately used it, though it had passed through many hands. This liability was held to rest, not upon any contract or direct privity between him and the party injured, but upon the duty which the law imposes on every one to avoid acts in their nature dangerous to the lives of others. (*Thomas* v. *Winchester*, 6 N. Y. 397.) In that case *Mayor, etc.*, v. *Cunliff* (2 N. Y. 165) was cited as an authority for the position that a builder is liable only to the party for whom he builds. Some of the examples there put by way of illustration were commented upon, and among others the case of one who builds a carriage carelessly and of defective materials, and sells it, and the purchaser lends it to a friend, and the carriage, by reason of its original defect, breaks down and the friend is injured, and the question is put, can he recover against the maker? The comments of RUGGLES, Ch. J., upon this supposititious case, in *Thomas* v. *Winchester*, and the ground upon which he answers the question in the negative, show clearly the distinction be-

tween the two classes of cases. He says that in the case supposed, the obligation of the maker to build faithfully arises only out of his contract with the purchaser. The public have nothing to do with it. Misfortune to third persons, not parties to the contract, would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life.

Applying these tests to the question now before us, the solution is not difficult. Stevenson undertook to build a scaffold ninety feet in height, for the express purpose of enabling the workmen of Smith to stand upon it to paint the interior of the dome. Any defect or negligence in its construction, which should cause it to give way, would naturally result in these men being precipitated from that great height. A stronger case where misfortune to third persons not parties to the contract would be a natural and necessary consequence of the builder's negligence, can hardly be supposed, nor is it easy to imagine a more apt illustration of a case where such negligence would be an act imminently dangerous to human life. These circumstances seem to us to bring the case fairly within the principle of *Thomas* v. *Winchester.*

The same principle was recognized in *Coughtry* v. *The Globe Woolen Co.* (56 N. Y. 124,) and applied to the case of a scaffold. It is true there was in that case the additional fact that the scaffold was erected by the defendant upon its own premises, but the case did not depend wholly upon that point. The scaffold was erected under a contract between the defendant and the employers of the person killed. The deceased was not a party to that contract, and the same argument was made as is urged here on the part of the defendant, that the latter owed no duty to the deceased; but this court held that in view of the facts that the scaffold was upwards of fifty feet from the ground, and unless properly constructed was a most dangerous trap, imperiling the life of any person who might go upon it, and that it was erected for the very purpose of accommodating the workmen, of whom the person killed was one, there was a duty toward them resting upon

the defendant, independent of the contract under which the structure was built, to use proper diligence in its construction. The additional fact that the structure was on the premises of the defendant was relied upon, but we think that, even in the absence of that feature, the liability can rest upon the principle of *Thomas* v. *Winchester*.

*Loop* v. *Litchfield* (42 N. Y. 351; 1 Am. Rep. 543) was decided upon the ground that the wheel which caused the injury was not in itself a dangerous instrument, and that the injury was not a natural consequence of the defect, or one reasonably to be anticipated. *Losee* v. *Clute* (51 N. Y. 494; 10 Am. Rep. 638) was distinguished from *Thomas* v. *Winchester*, upon the authority of *Loop* v. *Litchfield*.

We think there should be a new trial as to the defendant Stevenson, and that it will be for the jury to determine whether the death of the plaintiff's intestate was caused by negligence on the part of Stevenson in the construction of the scaffold.

The judgment should be affirmed, with costs, as to the defendant Smith, and reversed as to the defendant Stevenson, and a new trial ordered as to him, costs to abide the event.

ANDREWS, Ch. J., DANFORTH and FINCH, JJ., concur; EARL, J., concurs as to defendant Smith, and dissents as to defendant Stevenson. MILLER, J., absent; TRACY, J., not sitting.

Judgment accordingly.