## DENNIS NUGENT, RESPONDENT, *v.* THE ATLAS STEAM-SHIP COMPANY (LIMITED) APPELLANT.

*Negligence — defective articles used by an employee — evidence as to their being furnished by the party engaging so to do.*

In an action brought to recover damages for the alleged negligence of the defendant, in the execution of a contract for the painting of the defendant's vessel, which provided that the "ship" "was to furnish ropes for the second tier of staging," it appeared that the staging was erected by one Wilson, who was furnished with certain ropes for this purpose by the defendant's agent. These ropes were found not to be sound or fit to be used for such purpose, whereupon the defendant's agent told Wilson and his companion that they could use all the ropes they could find. Wilson then took a rope upon the vessel, known as a try-sail vang, and used it in the erection of the staging, under the weight of which the rope broke and allowed the staging to fall upon the plaintiff, who was severely injured thereby. The undisputed testimony showed that this try-sail vang was not only unfit to be used for the support of the staging, but that its insufficiency was external and obvious to any one accustomed to the use of ropes.

*Held*, that, in the absence of any evidence that an agent of the defendant pointed out this particular piece of rope as a suitable support for the staging, the plaintiff was not entitled to succeed.

That the statement of the defendant's agent, that they could use what rope they could find, although it might have been practically a refusal to furnish the ropes,

and, therefore, a breach of the defendant's contract, did not render the defendant liable to the plaintiff for the injury resulting from the use of the improper rope used by the plaintiff.

APPEAL from a judgment, entered June 13, 1887, upon the verdict of a jury at the New York Circuit, for $10,618.42, and from an order denying a motion for a new trial made May 23 1887, on the minutes of the court before which the trial was had.

*Everett P. Wheeler*, for the appellant.

*George M. Curtis*, for the respondent.

BARTLETT, J.:

The plaintiff was injured by the fall of a scaffold while engaged in painting the defendant's steamship, Athos. He was not in the employ of the defendant corporation, but was working for a firm of painters who had entered into a contract to scrape and paint the vessel. That contract provided that the ropes to sustain the second tier of staging should be furnished by the defendant. Its language on this subject was in these words: " Ship to furnish ropes for the second tier of staging." The staging was erected by one Joseph Wilson with the assistance of from four to six other men, who like himself were employed by the firm of painters. In putting it up he used a rope, known to sailors as a try-sail vang, which was ordinarily a part of the running rigging belonging to the ship. According to Wilson's own testimony, a few ropes were brought on deck which were not good or fit to use, and thereupon the defendant's shore boatswain or rigger, James Squires, told him and his companions that they could use what ropes they could find. They then took the try-sail vang, which proved insufficient to support the second tier of staging with the painters at work upon it, and broke under their weight, thus allowing the staging to fall upon the plaintiff and injure him severely. The undisputed testimony indicated that this try-sail vang was not only unfit to be used for the support of the scaffold, but that its insufficiency was apparent externally and ought to have been obvious to anyone accustomed to the use of ropes, as a rigger or sailor. Wilson seems to have used it, however, without observing its defective condition, although he testified that he was somewhat familiar with ropes, having been to sea for about twenty or twenty-two years.

No attempt was made to show that any agent of the defendant pointed out this particular piece of rope as a suitable support for the staging, but the theory of the plaintiff's case seems to have been that the painters were led to believe that it was sufficient by the general direction from the shore boatswain to use what ropes they could find, after they had rejected those which had first been brought on deck.

While no contract relation existed between the defendant corporation and the plaintiff who was injured, the defendant owed him certain obligations arising out of its contract with his employers who had undertaken to paint the ship. In furnishing the ropes for the support of the second tier of staging under the contract, the defendant was bound to exercise reasonable care to provide ropes which should be free from dangerous defects; and for a failure to exercise this care, the defendant would be liable to a person in the employment of the other party to the contract. (*Devlin* v. *Smith*, 89 N. Y., 470, 477.) "As a general rule," says the Court of Appeals, in the case cited, " the builder of a structure for another party, under a contract with him, or one who sells an article of his own manufacture, is not liable to an action by a third party who uses the same with the consent of the owner or purchaser, for injuries resulting from a defect therein, caused by negligence: The liability of the builder or manufacturer for such defects is in general only to the person with whom he contracted. But, notwithstanding this rule, liability to third parties has been held to exist when the defect is such as to render the article itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use." In the present case it was manifest that the use of rotten rope as a support for one of the tiers of staging on which the painters were to stand would be fraught with danger to those who might be upon it or beneath it. If, therefore, a representative of the defendant had either furnished this particular try-sail vang as a fit and proper rope to be used for the purpose, to which it was applied, or if he had indicated a lot of ropes of which this was one, as similarly suitable, and, in consequence of such indication, it had subsequently been employed by the painters, in the manner in which it was employed, we think the defendant would have been liable to the plaintiff in the action, assuming that the defect in the rope was

not so apparent as to make it negligence on the part of the painters not to detect its true condition.

But the case made out by the plaintiff is quite different. The painters appear to have refused to use any of the ropes in the lot brought on deck at the instance of the defendant's shore boatswain, and by him indicated as being suitable and sufficient. Then, according to their account, they were told by the shore boatswain to take what they could find about the deck. In this direction there was no expression of suggestion or indication that any particular rope or set of ropes about the deck was sufficient or proper to be used for the support of the scaffolding in question. It was tantamount to saying to the painters that, inasmuch as they were not satisfied with those ropes which had been shown them in the first place, they might choose for themselves from such others as they could find. It may be said that this was practically a refusal to furnish the ropes at all, and, therefore, a breach of the defendant's contract; but even if it was, that would not render the defendant liable to this plaintiff. The defendant having utterly failed or refused to furnish any other ropes than those which the painters deemed unsuitable, if they went on to choose and take one for themselves without any assurance as to its suitability from the defendant, the latter cannot be held liable because their choice proved unfortunate.

Under the circumstances disclosed by the record in this case, we think the negligence which caused the plaintiff's injuries was solely that of his fellow servants, and, therefore, that the recovery in his favor against the defendant cannot be sustained. Judgment reversed and new trial ordered, with costs to appellant to abide the event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.