(96 App. Div. 169.)

KAHNER v. OTIS ELEVATOR CO.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. NEGLIGENCE—DANGEROUS MACHINERY—REPAIRS—OBLIGATION ASSUMED.

Where defendant, employed to repair an elevator in a building, was notified that it was used both for freight and passengers, and agreed "to examine it very carefully, and fix it up in first-class condition—as good as ever"—so that no accident could "happen to anybody," defendant assumed the same obligation as rested on the manufacturer who furnished the elevator in the first instance, as a machine appurtenant to the building in which it was used.

2. SAME—INJURIES TO THIRD PERSONS.

Where defendant agreed to repair an elevator used for freight and passengers, and, in so doing, negligently inserted a key in the brake wheel, so that the wheel was cracked, and thereafter broke and fell on plaintiff

while he was using the elevator, defendant was liable for the injury so sustained, though the elevator, when properly constructed, was not in itself a dangerous appliance.

Appeal from Trial Term, New York County.

Action by Milton Kahner, an infant, by Lazarus Kahner, his guardian ad litem, against the Otis Elevator Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Wm. B. Hornblower, for appellant.

C. F. Brown, for respondent.

PATTERSON, J. In an action to recover damages for personal injuries, the infant plaintiff had a verdict; and from the judgment entered thereon, and from an order denying a motion for a new trial, the defendant appeals.

The record presents a question of law of much interest, concerning which there are conflicting decisions not only in the courts of this state, but in other jurisdictions. The defendant was employed to repair and put in order an elevator which was used upon the premises of a corporation known as L. Kahner & Co., located in 100th street, in the city of New York. That elevator was placed in the building by the Graves Elevator Company about 13 years before the occurrence out of which this action arises. During the whole period from the time of its installation until April, 1902, it never had been repaired. In that month the defendant was employed to put it in perfect order, or, to quote from the testimony, "to fix it up in first-class condition—as good as ever"; "to examine it very carefully," so that no accident could "happen to anybody." The elevator was used as a lift for merchandise, but persons connected with the corporation of Kahner & Co. also made personal use of it, in going up and down. It was therefore partly a freight and partly a passenger elevator, and that fact was communicated to the defendant at the time it was employed to make the repairs. One of the officers of the Kahner corporation told the defendant's representative to look over the elevator very carefully, and it is apparent from the proof that the defendant was employed to put it in complete repair, and make it safe for any and all of the purposes to which it was to be applied, or for which it was to be used, by the corporation and its employés. Such being the employment of the defendant, and the obligation it assumed, we think it stands in the same relation a manufacturer would occupy who furnished the elevator as a machine appurtenant to the building in which it was used, and that the same liability rests upon this defendant as would pertain to the manufacturer of such a machine. Before pursuing that topic, however, it is necessary to ascertain what the conditions were under which the accident, the subject of the present inquiry, occurred, and how fault is to be attributed, if at all, on the evidence, to the defendant or its servants, in connection with that accident.

Without entering into detail into the circumstances disclosed by the record, it is sufficient to say that, on the evidence, the jury were authorized to find, as they did, that the infant plaintiff was injured by reason of negligence on the part of the defendant's servants in making the repairs to the machinery by which the elevator car was moved. The accident occurred on September 24, 1902. On the car had been placed some empty tobacco boxes, to be lifted from the lower to the upper part of the building. It seems that, upon the operator pulling the check rope, the car would not move. He called upon the plaintiff, who was standing on a floor below, and asked him to see what was the matter. Thereupon the plaintiff, leaning over into the elevator shaft or well, pulled the check rope with a slight pull; and then a wheel, which was connected with the elevator shaft at the top of the apparatus, fell and struck him on the forehead, and he suffered injuries of the severest character. On the whole evidence, the jury were justified in finding that the fall of the wheel was caused by neglect of the defendant's servants in making the repairs to the elevator in the preceding month of April, which repairs were completed about the 1st of May, 1902. Witnesses testified to the fact that while at work the defendant's servants took off a brake wheel which was upon a shaft connected with the machinery at the top of the elevator well, and that, when they replaced the brake wheel upon the shaft, an iron sledge hammer was used to drive in a pin or key so as to secure the wheel firmly upon the shaft, and to prevent its moving by the operation of the machinery. It was also shown that the key intended to secure immobility of the brake wheel was a new one, and was too thick or too large, and, in order to put it in place, great force was resorted to in driving it. After the accident it was ascertained that marks of hammering upon the hub of the brake wheel and the key were plainly apparent, and it was then also discovered that the wheel was broken in three pieces, and some of the surfaces of the large pieces showed a crack which must have existed for some time; that it extended upwards towards the rim of the wheel, but that the portion of the crack which was nearest to the rim was new. The evidence as to physical conditions showed that the fracture was not one that could have occurred at once, but that it was a gradual extension of an opening made in the wheel, originating in the first instance by the force applied by the hammering, and afterwards enlarged by use of the machine until the wheel was finally severed at the rim.

Taking into consideration all of the testimony in the case, and giving it due weight, the jury were justified in believing that the initial cause of this disaster was the application of force in the introduction of the key to secure the brake wheel, and that this unskillful or negligent conduct made that machine, in fact, a dangerous appliance. The appeal is only from the judgment, and from every part thereof. The facts are not open to re-examination. We have, therefore, nothing to consider but questions of law which have been very ably presented and argued by counsel.

It is assumed that the defendant stands in the same relation that a manufacturer who originally furnished the apparatus would stand,

and that the ordinary rule of law would be that, in the absence of contractual relations or of privity between the manufacturer and a stranger, there is no liability for injuries either to person or property by reason of defects that may exist in machinery or in mechanical contrivances or appliances. That rule is established in other jurisdictions as well as by the courts of this state. What was held on that subject in Winterbottom v. Wright, 10 M. & W. 109, has been approved so often that it cannot now be questioned. Mayor of Albany v. Cunliff, 2 N. Y. 165; Loop v. Litchfield, 42 N. Y. 351, 1 Am. Rep. 513; Swan v. Jackson, 55 Hun, 194, 7 N. Y. Supp. 821. There are numerous other cases that might be referred to, if it were necessary, in support of the doctrine, but it is unquestioned as a general rule. Nevertheless there is an admitted exception to it, and that is that the liability of the manufacturer, notwithstanding the want of contractual relation, exists, as to a third party, where the machine or the mechanical appliance is in itself imminently dangerous. It is not disputed by the learned counsel for the appellant that this exception exists in the law, but it is insisted that the imminently dangerous character of the machine or appliance must be something inherent in its nature; and it is argued that, by the decisions of the courts of this state, such is the real test. As in Loop v. Litchfield, 42 N. Y. 351, 1 Am. Rep. 513, it was said that a fly wheel which broke was not a dangerous instrument; and the language of the opinion in that case is strongly indicative of the view that the inherently dangerous character of a machine, within the comprehension of the exception referred to, relates to instruments or articles which in their very nature are calculated to do injury to mankind, and are generally intended to accomplish that purpose. It is not to be disputed that an elevator properly installed is not a dangerous appliance to a building. As an appurtenance to modern structures, it is becoming almost as common in use as a staircase. Therefore, if the liability of the defendant here depends upon the adoption, as exclusive, of the definition of a dangerous instrument as above given, and in other cases referred to and cited by the appellant in argument, that liability would not exist. But is such definition exclusive and controlling in this case, and is the defendant relieved from liability in consequence thereof? As we look at it, the definition is not exclusive, for the proof shows that the elevator was made dangerous by the treatment it received from the appellant's servants in the performance of its duty and obligation to make it safe for the use of those authorized to use it.

To state the proposition clearly and distinctly, it is that, although a machine may not be in its nature inherently dangerous, yet, if it is made so by the neglect of a manufacturer having notice and knowledge that it is to be used by others than the purchaser, and injury results to others than the purchaser, directly traceable to that negligence, such manufacturer is liable to the person injured because of that negligence. This is undoubtedly an extension of the rule of law, but it has its support in authority. In Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311, the plaintiff's intestate was killed by the breaking of a scaffold upon which he was working. He was in the employ of the defendant Smith, who had entered into a contract with the defendant Stevenson to erect

the scaffold, which was improperly constructed. At the trial the complaint was dismissed as against Stevenson. The rule of law which is made applicable to this case is stated in the opinion of the Court of Appeals, which recognizes the general doctrine relating to the liability of the manufacturer to third parties; but it proceeds to say that, notwithstanding that principle, liability to third parties has been held to exist when the defect is such as to render the article in itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use. It was also stated that this liability is held to rest, not upon contract or direct privity between the manufacturer and the party injured, but upon the duty which the law imposes upon every one to avoid acts in their nature dangerous to third parties. The duty and obligation of the maker of a machine to construct it faithfully arises only out of his contract with the purchaser. The public have nothing to do with it. But where there is a duty resting upon a defendant, independent of the contract, to use proper diligence in its construction, the liability arises. In the case at bar the negligence of the defendant in creating the crack in the brake wheel of a high, unprotected elevator shaft, rendered it unsafe and imminently dangerous to human life, and we think that the case cited is authority for maintaining this action. So in Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387, the same principle was enunciated; and the decision went upon the ground, not that the machine was in its nature imminently dangerous to human life, but that it was made so by the act of the manufacturer, and hence was, within the meaning of the law, an instrument imminently dangerous to human life. In Davies v. Pelham Hod Elevating Co., 65 Hun, 573, 20 N. Y. Supp. 448, the General Term of the Supreme Court, in this department, took the same view. There the plaintiff's intestate was in the employment of a firm with which the defendants had contracted to furnish a derrick and appliances for hoisting purposes. In using it, the rope broke, and the boom of the derrick struck the plaintiff's intestate and caused his death. The court said, referring to Devlin v. Smith, supra, and Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, and other cases, that the fact that proof of knowledge by the defendant, who furnished the apparatus, of the uses to which it was to be applied, coupled with the fact that it was insufficient and improper, making it thus imminently dangerous to life, was enough, within the rule of law, to render the defendant responsible for injury to the plaintiff's intestate, even in the absence of any privity between them. That was not a dictum. It was a deliberate decision of that point. There are other cases which might be cited.

We think the rule as laid down in the Davies Case should be applied here, and yet we find ourselves in direct opposition to the decision of the Appellate Division in the Fourth Department in the case of Kuelling v. Roderick, etc., Manufacturing Co., 88 App. Div. 309, 84 N. Y. Supp. 622. We recognize the value of the learned and exhaustive consideration of the authorities made in that case, but we are compelled to dissent from the conclusion at which the court arrived, and to adhere to what was stated to be the law in the Davies Case.

Without further elaboration of this subject, we are of the opinion that the judgment and order should be affirmed, with costs. All concur.

INGRAHAM, J. (concurring). I concur in the affirmance of this judgment upon the ground that when the defendant undertook to repair the elevator, the fall of which caused the plaintiff's injuries, it assumed a duty to exercise care in the performance of its contract, a neglect of which, causing injury, imposed a liability. Such obligation extended to the other party to the contract, and to his employés and others occupying the premises in which the elevator was located; and the plaintiff, a son of 'one of the contracting parties, and in his employ, having been injured when engaged in the business of the employer, was entitled to recover for the injuries sustained in consequence of the negligence of the defendant. If the plaintiff had been injured by the negligence of the defendant when engaged in making the repairs to the elevator, I assume there would be no question but that the defendant would be liable; and I do not think that the defendant is relieved from liability because it had finished the work, but, by its negligence, had left the elevator in such a condition that it caused the injury. The liability is based upon the neglect of the defendant to perform a duty which it assumed when it undertook to make the repairs. In consequence of that neglect, the plaintiff, when engaged in the performance of his duties upon the premises, was injured; and, for the damages sustained, the defendant is, I think, liable. In the case of the owner of a tenement house who leases apartments, retaining control of the halls and stairways, there is imposed the duty of keeping them in repair; and a person lawfully upon the premises, who is injured by a neglect of the landlord to perform that duty, has a cause of action to recover for such injuries. The liability is not limited to the lessee. And upon the same principle the obligation of the defendant is not limited to the person with whom he made the contract, but extends to those who are lawfully upon the premises. The action is based on defendant's negligence in the performance of a contract, not upon a breach of the contract; and any one who is injured by that negligence is, I think, entitled to maintain an action to recover the damages thus sustained.